**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

Southern District of New York
Jennifer L. Brown
*Attorney-in-Charge*

July 7, 2016

**BY ECF**

Honorable Lewis A. Kaplan
United States District Judge for
 the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St., Courtroom 21B
New York, NY 10007-1312

Re:   **United States of America v. Trendon T. Shavers**
      **15 Cr. 157 (LAK)**

Dear Judge Kaplan:

I respectfully submit this sentencing letter on behalf of my client, Trendon T. Shavers.

Mr. Shavers has pleaded guilty to one count of securities fraud, agreeing that, from September 2011 to September 2012, he engaged in a Ponzi scheme that resulted in an approximate total loss of $1,228,600 to 48 investors. The Department of Probation calculates an advisory guidelines range of 33-41 months imprisonment, and recommends a sentence of 33 months. For the reasons below, I ask the Court to sentence Mr. Shavers to five years of probation.

Trendon Shavers is a 33-year old U.S. citizen who has led an otherwise law-abiding life, and poses no future danger of any kind to the community. He has a steady work history and, notwithstanding his offense, maintains the love and support of his family and friends, who describe him in their letters to this Court as generous, good-hearted, intelligent, and kind.[1]

███████████████████████████████████████ Mr. Shavers always found school to be a struggle. So, rather than go to college after high school, he started working

---

[1] Attached hereto are letters to the Court from Mr. Shavers' father, mother, father-in-law, and friends. Mr. Shavers has insisted that his wife and twin boys have no involvement in his sentencing, to spare them additional pain and suffering from his actions.

Hon. Judge Lewis A. Kaplan               July 7, 2016
United States District Court                Page 2

United States of America v. Trendon T. Shavers
15 Cr. 157 (LAK)

with computers, providing computer and tech support services. From there, he became interested in day trading using digital currencies. Eventually, he began soliciting investors, making false promises to them and using some of the monies they gave him to support himself and his family. Without question, what Mr. Shavers did was wrong. He not only accepts this, but is deeply ashamed by his actions. Trendon Shavers Letter to the Court (**Exhibit A**). He made a series of poor choices following a series of bad investments, and what began as a legitimate business became an illegal fraud.

Mr. Shavers' post-fraud conduct demonstrates his remorse and the fact that he will never violate the law again. Since his arrest and release in November 2014, Mr. Shavers has spent his time keeping his family together, and trying to make amends – as a son, husband, and father – for the pain he has caused others. He "has kept all court appearances and has been in compliance with all terms and conditions of his pre-trial release." Pre-Sentence Report ("PSR") at 23. "He is not viewed as a flight risk or a danger to the community." *Id.* He is committed to working hard, obeying the law, raising his two boys, and making amends by paying back the money he still owes his former investors.

For these reasons, and the others discussed below, I respectfully submit that a probationary term of five years best comports with §3553's parsimony principle and is the appropriate sentence here.

## BACKGROUND

**Trendon T. Shavers**

Trendon T. Shavers was born in El Paso, Texas in 1982, and is a life-long Texan. His mother, Roberta, is a piano teacher. His father, Ted, is a bus driver and also buys, fixes, and resells automobiles. PSR ¶¶ 56-57.

███████████████████████████████████████
████████████████ made school and homework a consistent struggle for Mr. Shavers, but he never gave up. Ted Shavers Letter to Court (**Exhibit B**). Instead he worked as hard as he could, and focused on excelling at the things he enjoyed. One of the areas in which Mr. Shavers excelled was cooking, another was computers. "When he was in middle school he was so good with the computer he was giving up his recess, lunch and after school time to help the teachers fix the computers." Roberta Shavers Letter to Court at 1 (**Exhibit C**).

This willingness to help his teachers was not unusual for Mr. Shavers. Indeed, each of the persons providing the attached letters of support for Mr. Shavers remark on how he has always been willing and happy to go out of his way to help others – which makes his

offense all the more bewildering and aberrational to them.

In 2001, Mr. Shavers graduated from McKinney High School in McKinney, Texas. PSR ¶ 76. He immediately found work in the computer field, working as a consultant for various businesses and schools, and providing related tech support to various companies. *Id.* ¶¶ 87-92. A few years after graduating high school, Mr. Shavers met Ashley Snyder, and fell in love with her. Ashley already had twin boys – T▆▆▆▆ and T▆▆▆ ▆▆▆, then age three – from a previous marriage. Mr. Shavers did not hesitate; he welcomed all three into his life without reservation. On June 24, 2006, Mr. Shavers and Ashley got married. PSR ¶ 60.

"Ashley Shavers described her husband [to the Department of Probation] as hardworking, loyal, funny, sweet, and family oriented. She said he is a 'really good stepdad' and he loves helping other people." PSR ¶ 61. This description is echoed by the family members and friends who have submitted letters to this Court in advance of sentencing. His father-in-law, Michael Snyder, informs that from "day one of their marriage, through all the difficult times, Trendon Shavers has never complained about supporting the boys to this day. I have always been impressed with the way he accepted all of that responsibility." Michael Snyder Letter to Court (**Exhibit D**). Likewise, Mr. Shavers friend and neighbor, Jean Grimsley, notes that

> When Trendon met and married Ashley, he took on a huge commitment to care and provide for her and her twin boys T▆▆▆▆ and T▆▆▆▆, who were three at the time. Trendon has done an amazing job raising the twins with Ashley. As we gathered with family and friends, Trendon would be out throwing a ball, playing with the boys, or teaching them something. He has been a responsible and reliable husband and father.

Jean Grimsley Letter to Court (**Exhibit E**).

Blessed with his new family and responsibilities, Mr. Shavers worked even harder. As someone involved in technology, Mr. Shavers became interested in day trading and new digital currencies like Bitcoin. He began day trading with his own money, and was soon doing so well that he left his technology job to focus on it. PSR ¶¶ 87-88; Trendon Shavers Letter to the Court (Ex. A) As discussed more fully below, Mr. Shavers did not originally intend to engage in a Ponzi scheme. Instead, after making some bad investment decisions, Mr. Shavers desperately tried to recoup his losses, and keep his business afloat, by attracting additional investors through false promises. Eventually, the bubble burst, and

Hon. Judge Lewis A. Kaplan				July 7, 2016
United States District Court				Page 4

United States of America v. Trendon T. Shavers
15 Cr. 157 (LAK)

"something I felt at the time was going to help my family, ultimately caused it to collapse." *Id.*

The last four years have been extremely difficult for Mr. Shavers and his family, especially at the beginning. The SEC filed charges against Mr. Shavers in 2013. Mr. Shavers became a focus of local media, and a local pariah. He had no income, his bank accounts were frozen, his assets were confiscated, he had trouble finding work, and Mr. Shaver and his family eventually lost their apartment. PSR ¶¶ 60-61; Trendon Shavers Letter to the Court (Ex. A). Unsurprisingly, faced with these financial pressures and uncertainties, the couple began to fight, and Ashley began to drink heavily to "put all the worries out of my head." PSR ¶ 61. One fight even turned physical, with a drunken Ashley throwing a laptop at Mr. Shavers, and Mr. Shavers kicking out at Ashley.[2]

Thankfully, they both worked hard to rebuild the bonds between them and accept the new circumstances of their lives. Ashley stopped drinking and found a job as a bus driver for the local Independent School District ("ISD"). *Id.* ¶ 59. In turn, Mr. Shavers has found a series of jobs as a line cook at area restaurants. *Id.* ¶¶ 77-84. Having lost their apartment, the family moved into Ashley's father's small home for several months, until they saved enough money to rent an apartment. *Id.* ¶¶ 65-66; Michael Snyder Letter to Court (Ex. D). Ashley relates that "really things have turned around a lot," and that "they are doing well and that they worked hard for the little they have." PSR ¶ 65. Mr. Shavers relates his deep shame at the harm and suffering he has caused his family. Trendon Shavers' Letter to the Court (Ex. A).

The Shavers family now live in a modestly furnished apartment in Prosper, Texas. The Department of Probation reports that "there has been no contraband observed in the home and that it does not appear the defendant is living beyond his reported financial status." PSR at 23. None of this is surprising.

With the exception of his offense conduct, it is readily apparent that Mr. Shavers "is a good man, a great son, a great husband, and a great father." Jean Grimsley Letter to Court (Ex. E). Moreover, Mr. Shavers has learned bitter lessons from the "wrong decision that cost me more than I could have ever imagined." Trendon Shavers Letter to the Court (Ex. A). Bluntly put: he will never violate the law again.

---

2 Ashley called the police and Mr. Shavers was arrested. Ashley later submitted an affidavit of non-prosecution and requested a dismissal. On January 27, 2014, the case was dismissed. PSR ¶ 46, 61-65.

Hon. Judge Lewis A. Kaplan  July 7, 2016
United States District Court  Page 5

United States of America v. Trendon T. Shavers
15 Cr. 157 (LAK)

**The Offense**

Bitcoin is a legal, digital currency that may be used to purchase goods and services online, or traded on online exchanges for conventional currencies, including the U.S. dollar. It is decentralized, meaning it is not controlled by any single administrator or central authority, which is one of the reasons it is highly price-volatile. PSR ¶¶ 8-12.

As a day trader, Trendon Shavers became increasingly intrigued by the potential investment and arbitrage opportunities of bitcoins. He began investing in bitcoins on his own, and then for friends, and then, as his business grew, founded and operated Bitcoin Savings and Trust ("BS&T") from his McKinney, Texas home. Mr. Shavers solicited for BS&T investors, primarily in online chat rooms dedicated to Bitcoins, promising that, by lending bitcoins to others, and trading and selling bitcoins against the U.S. dollar, he could earn investors up to 1% a day. BS&T was a failure, and, as his losses mounted, Mr. Shavers began operating it as a Ponzi scheme, using the bitcoins of new investors to pay the promised interest amounts to older investors. PSR ¶¶ 13-20.

Of the more than 764,000 bitcoins raised from investors, approximately 618,000 were returned to them. PSR ¶ 17. Of the approximately 100 investors, at least 48 lost all or part of their BS&T investment. *Id.* In addition, Mr. Shavers, who had lost his own investment monies, took approximately $220,000 in bitcoins and money belonging to his investors to cover his own rent, car payments, groceries, and other family expenses. *Id.* ¶¶ 21-26. In total, the loss attributable to Mr. Shavers and his offense approximates $1,228,660. *Id.* ¶¶ 25-26.

Mr. Shavers takes full responsibility for his actions:

> I know I messed up and know people lost a lot of money. It was never my intention to hurt anyone and especially not those that had put their trust in me and my word. I had a business in a small community that was unregulated, unfiltered that went belly up because of my greed. To this day I know where those coins went and who it was, but it was my fault, my doing that caused the hardest thing in my life to occur and I take full responsibility for it.

Trendon Shavers' Letter to the Court (Ex. A). Mr. Shavers' words of repentance are sincere and wholehearted, but they also reveal a key mitigating difference between him and sociopaths, like Bernie Madoff, who intend to create fraudulent Ponzi scheme from the start with the sole aim of enriching themselves.

Hon. Judge Lewis A. Kaplan                                  July 7, 2016
United States District Court                                Page 6

<u>United States of America v. Trendon T. Shavers</u>
15 Cr. 157 (LAK)

Mr. Shavers began day trading in bitcoins using just his own money to support his family. "At first I invested my money. I made small loans to people that I knew or those people who were known in the community and respected by others." Trendon Shavers Letter to the Court at 1 (Ex. A). As Mr. Shavers found more and more success, he quit his tech job to concentrate on trading, and "decided to ask a group of close friends to lend me Bitcoins so I could increase my business." *Id.* As his healthy trading continued to expand, he created BS&T. *Id.*

"Ultimately I made some bad loans (greed got in the way of common sense)." Trendon Shavers Letter to the Court at 1 (Ex. A). This is where Mr. Shavers made the "wrong decision that cost me more than I could have ever imagined." *Id.* Believing he could recoup the losses if given the time, Mr. Shavers began making promises to encourage people to invest and remain invested. *Id.* Mr. Shavers was wrong. "As you may know, the price of Bitcoin soared during that time and I simply couldn't keep up." *Id.*[3] Eventually, Trendon, who had never hidden behind internet anonymity and had often met his investors face-to-face or on the phone (PSR ¶ 20), admitted to his losses and "paid back everyone I could, starting with those that had most recently joined and the small accounts." Trendon Shavers Letter to the Court at 1 (Ex. A). By then, of course, it was too late.

> I've tarnished our family's name, caused pain and turmoil with friends and family, lost good friends, jobs and the confidence I once had growing up in a wonderful family. It's hard to realize that something I felt at the time was going to help my family, ultimately caused it to collapse.

*Id.*

## ARGUMENT

### THE 3553(a) FACTORS SUPPORT A SENTENCE OF PROBATION

In selecting a sentence, this Court takes as its "lodestar the parsimony clause of 18 U.S.C. § 3553(a)." *United States v. Douglas*, 713 F.3d 694, 700 (2d Cir. 2013). That provision directs sentencing courts to "'impose a sentence sufficient, but not greater than necessary, to comply with' the factors set out in 18 U.S.C. § 3553(a)(2)," namely, "proportionality, deterrence, incapacitation, and rehabilitation." *Id.; see also United States v. Ministro-Tapia*, 470 F.3d 137, 142 (2d Cir. 2006). "[D]istrict courts may impose

---

[3] Since its introduction in 2009, the bitcoin's value has fluctuated wildly, ranging from less than $2/bitcoin to more than $1,200/bitcoin.

Hon. Judge Lewis A. Kaplan  July 7, 2016
United States District Court  Page 7

United States of America v. Trendon T. Shavers
15 Cr. 157 (LAK)

sentences ... based on appropriate consideration of all the factors listed in § 3553(a)." *Pepper v. United States*, 562 U.S. 476, 490 (2011). In this regard, while the Guidelines range is one such factor, it is only one of them, and "the Sentencing Guidelines are just that, guidelines, and ... 'they truly are advisory.'" *Douglas*, 713 F.3d at 700 (*quoting United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc)). This Court "may not presume that the Guidelines range is reasonable," but rather "must make an individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 50 (2007).

### A. Section 3553(a)(1): Mr. Shavers' Personal Characteristics and Offense Conduct

In this case, the relevant § 3553(a) factors support a sentence of five years probation. With respect to his "history and characteristics," § 3553(a)(1), Mr. Shavers is a 33-year-old U.S. citizen with a high school diploma, a steady work history, and the unqualified support of his family members and friends. He feels deep remorse for the harm that he knows he has inflicted on his damaged investors, and seeks probation, in part, because it will help him provide faster and fuller financial restitution to them. In arriving at a just sentence, the Court also should give strong consideration to the fact that Mr. Shavers has led an otherwise exemplary and law-abiding life, has spent the last three years quietly and lawfully providing for his family, and that there is no indication whatsoever that there is any recidivist risk here. In sum, his offense should not overshadow the evident fact that Mr. Shavers "is a good man, a great son, a great husband, and a great father." Jean Grimsley Letter to Court (Ex. E).

With respect to the "nature and circumstances of the offense," § 3553(a)(1), Mr. Shavers has no explanation or excuse. He did not start BS&T intending it to be a fraud, and can only apologize for his decision to embark upon a fraud in his desperate attempt to fix things. He has returned what money he could, and intends to pay back as much as he can, as fast as he can. Indeed, under the instant facts, a prison sentence will do little more than unduly harm Mr. Shavers' entire family and delay and lessen restitution to Mr. Shavers' prior investors.

### B. Section 3553(a)(2): The Statutory Sentencing Goals

With respect to the need for the sentence to punish, deter, and incapacitate, § 3553(a)(2)(A)-(C), a probationary sentence suffices. "In assessing ... deterrence, protection of the public, and rehabilitation, ... there would seem to be no better evidence than a defendant's post-incarceration conduct." *Pepper*, 576 U.S. at 491 (*quoting United States v. McMannus*, 496 F.3d 846, 853 (8th Cir. 2007) (Melloy, J., concurring)). Mr. Shavers' post-arrest conduct has been exemplary, and demonstrates that a prison term is not called for here. All the sentencing objectives will be met, indeed supported, by a sentence of

Hon. Judge Lewis A. Kaplan  July 7, 2016
United States District Court  Page 8

United States of America v. Trendon T. Shavers
15 Cr. 157 (LAK)

probation.

Deterrence, protection of the public, and rehabilitation already has been achieved. As detailed above, the instant offense is the only illegality in Mr. Shavers' otherwise law abiding life, and there is no risk that he will re-offend. Mr. Shavers is permanently enjoined from having anything more to do with the securities business. More than that, there is no question that he has learned his lesson fully and completely, and will not re-offend. Mr. Shavers is simply not the same person now that he was years ago – he is no longer a day-trader or a technologist, but a cook who would use his time on probation taking care of his family and repaying those he monetarily harmed.

> Trendon has a good job today and is trying to provide for his family. The hardship would be great to many people who love him and would certainly have a devastating effect on his marriage and his boys for the rest of their life. His parents as well as grandparents too would have a tremendous loss if he was to be incarcerated.
>
> In talking to Trendon he is remorseful and he feels bad some monies were lost. He is extremely sorry for that. I think he got caught up in a new technology. He made a mistake and I truly believe he regrets it. He knows he broke the law and pleaded guilty to that. Trendon is a positive young man and has taken responsibility for his mistake. In his actions since this happened I have seen a more serious side of Trendon and he has worked hard to be a better person and learn a trade he is excelling at. I pray he gets a second chance to be worthy in the eyes of those who love him and his friends.
>
> Your Honor, I believe Trendon is worthy of another chance and if incarcerated it would forever hurt many innocent people, as noted above.

Gus Payne Letter to Court at 1-2 (**Exhibit F**); *see also* Jean Grimsley Letter to Court (Exhibit E) ("He is very remorseful. As you contemplate the punishment for the consequences of his poor choices, please keep the following in mind. He is a good man, a great son, a great husband, and a great father.").

Mr. Shavers understands the harm he has caused, and he is deeply ashamed. As he tells the Court: "I will forever regret my actions and the consequence it had on others. I

Hon. Judge Lewis A. Kaplan            July 7, 2016
United States District Court           Page 9

United States of America v. Trendon T. Shavers
15 Cr. 157 (LAK)

intend to do my very best to make whole those who relied on me and who I wronged." Trendon Shavers Letter to the Court (Ex. A). Indeed, he already has started. He is no longer the brash and cocky person, salesman and trader he was in the past. Instead, in the early middle of his life, Mr. Shavers has reinvented himself, working to support his family as a personal chef and as a cook at Del Frisco's Restaurant Group. PSR ¶¶ 77-84; Jean Grimsley Letter to Court (Ex. E). While times are tough, he realizes now that the best way to provide for his family is to be there for them. He works hard and then spends his free time quietly with his wife, daughter, family, and neighbors. *See* Letters at Exs. A – F. As Probation observed, Mr. Shavers now lives "modestly" and within "his reported financial status" – even if that requires him, his wife, and children to live for six months with his father-in-law while they saved money to rent an apartment. PSR ¶¶ 65-66; Michael Snyder Letter to Court (Ex. D). He "has been in compliance with all terms and conditions of his pre-trial release." *Id.* at p. 23. He is not "a danger to the community." *Id.* Mr. Shavers agrees with Probation's recommendation that 10% of his gross monthly income go toward providing restitution. *Id.* at 22.

It is respectfully submitted that the needs of the public are best met not by sending Mr. Shavers to prison, but by allowing him the opportunity to provide that restitution to his victims, and by preventing the serious harm to the innocent members of his family that would result from a prison sentence.

> I do not know what Ashley and the boys will do if Trendon has to do time over this. Ashley does not make enough money to support the boys without Trendon's pay so they would probably have to move back in with her dad or us. They have suffered enough … all of them. The boys should not suffer any more. T▒▒▒ and T▒▒▒ are going into High School next year, very important years that they will need their dad (Trendon).

Roberta Shavers Letter to Court at 2 (Ex. C).

> If Trendon were to face prison time, his family would suffer greatly. Ashley's job as a school bus driver, which she has held for less than a year, would not be sufficient to support her boys who are now fourteen years old. They will lose their father figure as well as his financial support. Their future will be dramatically changed. Whereas they would be thinking of college, now they may be more concerned with financially helping their mother. In addition the emotional

Hon. Judge Lewis A. Kaplan                              July 7, 2016
United States District Court                            Page 10

<u>United States of America v. Trendon T. Shavers</u>
15 Cr. 157 (LAK)

> toll on them would be devastating.

Jean Grimsley Letter to Court (Ex. E).

> To incarcerate Trendon, the family would lose his income, his presence as a loving husband and his fathering of the twins, now 14 years old. It would tear at the very fabric, not just the seams, of the lives of his boys, Ashley and our family.

Ted Shavers Letter to Court (Ex. B).

### C. **Section 3553(a)(4): The Guidelines Range**

The Department of Probation has calculated an advisory Guidelines range of 33 to 41 months. But, this range is unreasonable here, because it is far greater than necessary to achieve the § 3553(a) objectives, and does not accord with the individualized assessment of defendant and offense mandated for arriving at a fair and proper sentence. *See* Argument, Parts A and B, *supra*.

A probationary sentence still constitutes a harsh punishment. In *United States v. Nesbeth*, Judge Block recognized that "sufficient attention has not been paid at sentencing by me and lawyers -- both prosecutors and defense counsel -- as well as by the Probation Department in rendering its pre-sentence reports, to the collateral consequences facing a convicted defendant." 15-CR-18 (FB), 2016 U.S. Dist. LEXIS 68731, *1 (E.D.N.Y. May 24, 2016). "The effects of these collateral consequences can be devastating." *Id.* at *2. "Convicted felons now suffer restrictions in broad ranging aspects of life that touch upon economic, political, and social rights" *id.* at 7[4], ranging from denial of benefits, denial of the right to vote, denial of housing benefits, and the difficulty of obtaining employment. A probationary sentence still makes Mr. Shavers a convicted felon, and "there are nationwide nearly 50,000 federal and state statutes and regulations that impose penalties, disabilities, or disadvantages on convicted felons." *Id.* at 14.

Indeed, Mr. Shavers already has spent the last four years facing many of the collateral consequences of his terrible errors in judgment. As his father-in-law explains:

---

[4] *Citing* Nora V. Demleitner, *Preventing Internal Exile: The Need for Restrictions on Collateral Sentencing Consequences*, 11 Stan L. & Pol'y Rev. 153, 154 (1999), and *Labels Like 'Felon' Are an Unfair Life Sentence*, N.Y. Times, at SR 10 (May 8, 2016) (discussing the stigmatizing effect of labels such as "felon," "ex-convict," and "ex-offender").

Hon. Judge Lewis A. Kaplan  July 7, 2016
United States District Court  Page 11

<u>United States of America v. Trendon T. Shavers</u>
15 Cr. 157 (LAK)

> The SEC filed charges against Trendon in 2013 and holding things together has been very difficult for the family since that time. Trendon has no way [of] making money after the SEC charges. He had no income and his savings went fast. His SEC suit was all over the media and he was unable to find decent employment. The Car (truck) was confiscated and savings frozen and eventually they also lost their apartment. Trendon's parents loaned an SUV for them to share until they could get a car of their own. Every day they were in worse shape and wondering if they would lose their utilities or have money for food.
>
> * * *
>
> Your Honor, I am not complaining because Trendon got arrested. I am trying to explain what they have gone through because I want you to understand why I am so proud of Trendon and Ashley and the twins. After almost 6 years of being broke financially, skimping on everything they could, losing their utilities on occasion and their homes, and worrying about holding their family together all that time. Trendon has spent every day of those 6 [sic] years knowing that he is solely responsible for all the hardships himself, his wife, and boys have suffered thru.
>
> They are trying very hard to turn their lives around and do the right things. I am very proud of them and I hope that you can see that they have already incurred a pretty hard time.

Michael Snyder Letter to Court (Ex. D); *see also* Trendon Shavers' Letter to the Court (Ex. A) ("I've tarnished our family's name, caused pain and turmoil with friends and family, lost good friends, jobs and the confidence I once had growing up in a wonderful family"); Ted Shavers Letter to Court (Ex. B) ("Trendon and his family continue to struggle with the affects [of being charged with a federal crime]; it's been 3 years now. Even though he holds down 2 jobs and Ashley works for Prosper ISD, they still need help with a car and bills.").

Hon. Judge Lewis A. Kaplan  July 7, 2016
United States District Court  Page 12

United States of America v. Trendon T. Shavers
15 Cr. 157 (LAK)

The collateral consequences of a conviction are real, devastating, and not taken adequately into account by the advisory Sentencing Guidelines. This is another reason why the probationary sentence requested by Mr. Shavers, and not the 33 month sentence recommended by Probation, is the sentence that best accords with the parsimony principle and the goals of sentencing.

## CONCLUSION

For all the foregoing reasons, the Court should impose a sentence of five years of probation.

Dated:    New York, New York
          July 7, 2016

                              Respectfully submitted,

                              _____/s/_____
                              Sabrina Shroff
                              Christopher Flood
                              Assistant Federal Defenders
                              Tel.: (212) 417-8700

cc:    Michael Ferrara, AUSA